## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ANTHONY D. ROBINSON,**

     **Petitioner,**

**v.**                                    **Case No. 8:16-cv-1046-MSS-AEP**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

     **Respondent.**

_____/

## <u>O R D E R</u>

Robinson filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state court conviction for lewd and lascivious battery. After reviewing the petition (Doc. 1), the response (Doc. 12), the reply (Doc. 20), and the relevant state court record, the Court **DENIES** the petition.

## PROCEDURAL HISTORY

A jury found Robinson guilty of lewd and lascivious battery and, the trial judge sentenced Robinson to twenty years in prison as a habitual felony offender and a prison releasee reoffender. (Respondent's Exhibit 1 at 100–03) Robinson appealed, and the state appellate court affirmed. (Respondent's Exhibit 4) Robinson moved for post-conviction relief (Respondent's Exhibit 6 at 1–22, 32–48), the post-conviction court denied relief (Respondent's Exhibit 6 at 23–29, 49–173), and the state appellate court affirmed. (Respondent's Exhibit 9) Robinson's federal petition follows.

## FACTS

On December 13, 2009, K.H., who was fifteen, lived with her adoptive mother and her adoptive mother's sons. (Trial Transcript[1] at 134–36, 165) That evening K.H. and her two brothers went to a party, and around 1:00 A.M. her mother picked them up from the party and returned home. (*Id.* at 138–40, 166) At home, after taking a shower, K.H. saw her two brothers in her bedroom playing with her video game console. (*Id.* at 140, 167) K.H. became angry and ordered them out of her bedroom. (*Id.* at 140, 167) K.H.'s mother scolded K.H. and told her that she would have to go to her biological father's home if she did not calm down. (*Id.* at 141, 167) K.H. became upset and left the home. (*Id.* at 141–42, 168)

K.H.'s mother hoped that K.H. would return home soon. (Trial Transcript at 142) After K.H. did not return home, K.H.'s mother left to look for K.H. but could not find her. (*Id.* at 142) K.H. walked to a convenience store and sat down at a bus stop because she was tired. (*Id.* at 169–71) Robinson approached K.H. and began to speak with her. (*Id.* at 171–72) K.H. called her ex-boyfriend on Robinson's mobile telephone to ask for a ride to Tampa. (*Id.* at 172–73) After K.H.'s ex-boyfriend said that he could not give K.H. a ride, Robinson offered K.H. a ride. (*Id.* at 173–74)

K.H. walked with Robinson to his home. (Trial Transcript at 174–75) K.H. sat down on a mattress in a bedroom, and Robinson left. (*Id.* at 175–76, 183–84)

---

[1] With the response to the petition, the Respondent filed a paper copy of the exhibits that contain the relevant state court record. (Doc. 14) The Respondent's Exhibits 1b, 1c, and 1d contain the trial transcript. (Doc. 14-1)

Robinson, who smelled like alcohol, returned with an object under a towel, showed K.H. a shotgun shell, and placed the object on K.H.'s head. (*Id.* at 184–85, 187) Robinson told K.H. to shut up and threatened to "blow her motherfucking brains out." (*Id.* at 185–86) K.H. believed that the object was a firearm and pleaded with Robinson to not kill her. (*Id.* at 185–86) Robinson placed a condom on his penis and vaginally raped K.H. (*Id.* at 186–87) After ejaculating, Robinson told K.H. to put on some socks and leave. (*Id.* at 187)

K.H. ran back home and removed the socks before she arrived at home. (Trial Transcript at 145–46, 188) K.H. fell into her mother's arms, started shaking, and told her that she was raped. (*Id.* at 146–48, 190) K.H.'s mother immediately called 911 to report the rape. (*Id.* at 148, 150–55) After police and paramedics arrived, K.H. identified for a police officer the home where Robinson raped her. (*Id.* at 190–91) K.H. identified Robinson, who was sitting in a police car, as the person who raped her. (*Id.* at 191)

During an interview with a detective at the police station, K.H. admitted that she lied when she told a police officer that Robinson had threatened her with the firearm at the bus stop. (Trial Transcript at 191–92) K.H. was embarrassed that she had voluntarily walked with Robinson to his home. (*Id.* at 192) A police officer found the socks that K.H. had discarded on her way home and a condom wrapper on the mattress inside Robinson's home. (*Id.* at 200–03) Records for Robinson's mobile telephone showed that K.H. called her ex-boyfriend on Robinson's telephone. (*Id.* at

199, 204–05) A sexual assault nurse observed redness on K.H.'s vagina and cervix, but testing did not reveal saliva, semen, or other bodily fluids on swabs of K.H.'s face, lips, and vagina. (*Id.* at 216, 218–20, 222–23)

After waiving his *Miranda* rights, Robinson at first denied sexual contact with K.H., but later admitted that he walked with K.H. to an abandoned home and engaged in sex with her. (Trial Transcript at 232–37, 250–52, 261, 266–67, 269–79) Also, during a recorded telephone call from jail, Robinson admitted to his mother that he "messed up." (*Id.* at 303)

## STANDARDS OF REVIEW

**AEDPA**

Because Robinson filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to a holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Robinson asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984), requires a defendant to demonstrate both deficient performance and prejudice:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"[T]here is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. A defendant cannot meet his burden by showing that the avenue

chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court denies the claim as procedurally defaulted. *Snowden v. Singletary*,

135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). Also, a petitioner's failure to comply with a state procedural rule governing the proper presentation of a claim bars review of that claim on federal habeas. *Coleman*, 501 U.S. at 729. "[A] state court's rejection of a federal constitutional claim on procedural grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001).

To excuse a procedural default on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## ANALYSIS

### Ground One

Robinson asserts that trial counsel deficiently performed by failing to request a competency evaluation during trial ("Sub-claim A") and by failing to present an insanity defense at trial ("Sub-claim B"). (Doc. 1 at 6–11)

#### Sub-claim A

Robinson asserts that trial counsel deficiently performed by failing to request a competency evaluation during trial. (Doc. 1 at 6–8)

The Respondent asserts that the claim is procedurally barred because Robinson failed to exhaust his remedies in state court. (Doc. 12 at 10–12) In his

federal petition, Robinson asserts that trial counsel deficiently performed by failing to request a competency evaluation after he declined to testify at trial (Doc. 1 at 6–8) (state court record citations omitted):

> When a defendant alleges that counsel was ineffective for failing to investigate competency, there must be at least a reasonable probability that the defendant would have been found incompetent. In determining whether a defendant would have been found incompetent, a court must evaluate whether at the time of the proceedings, the defendant met the standard set forth in Florida Rule of Criminal Procedure 3.211(a)(1). The standard is "whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as a factual understanding of the pending proceedings."
>
> In the instant case, the Petitioner's competency was reviewed by the trial court. After seeing three doctors, the Petitioner was found competent by [an] order on March 11, 2011.
>
> On December 9, 2011, the trial court records reflect the following conversation between the Petitioner and [the] trial court judge:
>
> | [Trial judge:] | Is anyone threatening or forcing you from being a witness? |
> |---|---|
> | [Robinson:] | No. I was instructed by the Lord and Savior Jesus Christ to not open my mouth. So, I got to do what he say[s]. |
> | [Trial judge:] | All right. My question is do you understand that the decision is your decision? |
> | [Robinson:] | And he made it. |
>
> The trial court found the Petitioner competent on March 11, 2011. Nine months later, on December 9, 2011, the

> Petitioner uttered the above on [the] court record. The record demonstrates that there was "at least a reasonable probability" that the Petitioner would have been found incompetent. The standard is "whether the defendant has sufficient present ability . . . ." The Petitioner argues that although trial counsel initiated the original competency evaluation, trial counsel for the Petitioner failed him on December 9, 2011, by not motioning the trial court for [a] competency evaluation, due to the [irrational] statements made by Petitioner as demonstrated above. Trial counsel was grossly ineffective by allowing the State of Florida to proceed against Petitioner while he was clearly incompetent to proceed.

In his amended motion for post-conviction relief, Robinson's claims were somewhat different. He did not fault trial counsel for not requesting a competency evaluation after he declined to testify and instead faulted trial counsel for not investigating and challenging the qualifications of the doctors who evaluated him and for not advising him to plead guilty (Respondent's Exhibit 6 at 41–42):

> Counsel was ineffective for failing to investigate the mental health evaluation of the two doctors who said he was competent.
>
> Counsel failed to adequately challenge the credentials of the doctors, counsel clearly misunderstood the significance of the psychiatrist who said the Defendant was incompetent. Had counsel [taken] the time to explain to the defendant incompetency was a good defense for him after the first psychiatrist examined him and said he was incompetent to stand trial, the defendant would have got his mind off of just going to trial, and would have listened to counsel when she was saying the State said make them an offer, in which the Defendant would have said five years, the State would have accepted the plea, [and] the Defendant would have went into open court and signed papers.

10

In his federal petition, Robinson asserts that had trial counsel requested a competency evaluation, he can demonstrate, under *Strickland*, 466 U.S. at 694, a reasonable probability that the trial judge would have determined that he was incompetent. (Doc. 1 at 6–8) In his post-conviction motion, Robinson claimed that trial counsel failed to challenge the credentials of the mental health care providers who found him competent. (Respondent's Exhibit 6 at 41–42) Moreover, he claimed that if trial counsel had advised him that competency was a "good defense," he can demonstrate, under *Lafler v. Cooper*, 566 U.S. 156 (2012), that he would have pleaded guilty and received a sentence of five years in prison. (Respondent's Exhibit 6 at 41–42)

Because the claim in the federal petition is based on different facts and a different legal theory than the claim in the motion for post-conviction relief, Robinson failed to exhaust his remedies in state court. *Kelley v. Sec'y, Dep't Corrs.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004) ("We simply require that petitioners present their claims to the state courts such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation."). If Robinson returned to state court to exhaust the claim, the post-conviction court would dismiss the claim as untimely and procedurally defaulted. Fla. R. Crim. P. 3.850(b) and (h). Consequently, the claim is procedurally barred on federal review. *Snowden*, 135 F.3d at 736.

Even if the Court were to find that the claim was properly preserved and review it under *de novo* review, the claim would fail. The trial transcript confirms that,

during the colloquy when the trial judge informed Robinson of his right to testify, Robinson told the trial judge that he "was just instructed by the Lord and Savior Jesus Christ to not open [his] mouth" and that he "got to do what he say[s]." (Trial Transcript at 310) When the trial judge asked Robinson if he understood that only he could decide whether to testify, Robinson responded, "And he made it," referring to "the Lord and Savior Jesus Christ." (*Id.*)

Trial occurred on December 7, 2011. (Trial Transcript at 1) Nine months earlier, on March 11, 2011, the trial judge determined that Robinson was competent, after three doctors evaluated him. (Respondent's Exhibit 1b at 63–72)

On November 8, 2010, Dr. Richard Carpenter evaluated Robinson, diagnosed him with psychotic disorder and personality disorder with schizoid features, and determined that he was incompetent to proceed to trial. (Doc. 37-2 at 2–5) Dr. Carpenter described Robinson's mental state as follows (Doc. 37-2 at 4):

> Memory, attention, and concentration were felt to be functioning essentially within normal limits. He was oriented [ ]. He was judged to be of average/low average intelligence. His thought processes were essentially logical and rational, save for his religious delusions. He stated that the Holy Spirit speaks to him and more relevantly he stated that the Lord appeared to him and told him that he would be set free from his criminal charge. He denied any brain injury or neurological impairment. His mood was somewhat euthymic which appeared to be related to his religious reverie and joyfulness about his relationship with the Lord. He denied problems with anger. He also denied problems with anxiety or bipolar disorder. He does have a personality disorder and given that he has been living a transient lifestyle, there is a strong suspicion of a schizoid personality disorder.

Dr. Carpenter concluded that Robinson was incompetent to proceed because he opined that Robinson could not assist his attorney in preparing a defense and could not testify about the nature of the charges (Doc. 37-2 at 4–5):

> [Robinson] knew the pleas that he could enter and understood the workings of a plea agreement and his rights therein. He stated that he would be set free by God and there was no way of rationalizing with him, even after providing several hypothetical scenarios in which he could be basically going to trial and potentially going to prison. None of this shook him from this belief. As a result, I do not believe that he can assist his attorney in preparing a defense, even though I think he probably has a factual understanding of the allegation. Thus, he does not meet this factor[.]
>
> . . .
>
> [Robinson] can testify relevantly as to the nature of the charge. However, I do not feel that he can testify in a sentencing hearing or perhaps at trial based on his delusional beliefs. Thus, it is felt that he does not meet this factor.
>
> In all, this defendant is felt to be incompetent to proceed. He is charged with a violent crime and therefore is felt to need treatment at the state hospital for competency restoration.

On November 17, 2010, Dr. Jill Poorman evaluated Robinson and determined that he was competent to proceed to trial. (Doc. 30-3 at 2–4) Robinson reported to Dr. Poorman that "he had never been hospitalized for psychiatric reasons on an inpatient basis and had never been involuntarily hospitalized, nor received any type of outpatient services." (Doc. 30-3 at 3) Robinson further "denied auditory [and] visual hallucinations," and "[h]is thought processes appeared rational and coherent

throughout [the] evaluation[ ]." (Doc. 30-3 at 3) Dr. Poorman determined that Robinson understood the range and nature of possible penalties that he faced and that Robinson could consult with trial counsel with a reasonable degree of understanding and could testify about relevant facts. (Doc. 30-3 at 3)

On January 14, 2011, the trial judge ordered another competency evaluation. (Respondent's Exhibit 6 at 171–72) On February 14, 2011, Dr. Peter Bursten reviewd the reports by Dr. Carpenter and Dr. Poorman, evaluated Robinson, and determined that he was competent to proceed to trial. (Doc. 30-3 at 6–10) Robinson reported to Dr. Bursten "no history of inpatient or outpatient mental health treatment" and stated that "he [had] never taken psychiatric medication." (Doc. 30-3 at 8) Dr. Bursten determined that "[t]here was no evidence or reports concerning [an] underlying thought disorder or related psychotic-like symptomatology" and reported that Robinson's "[t]hinking was logical and goal directed." (Doc. 30-3 at 8)

Dr. Bursten determined that Robinson understood the range and nature of the penalties and that Robinson could testify about relevant facts, even though Robinson expressed hope that God would resolve his criminal case (Doc. 30-3 at 9–10):

> Appreciation of the Range and Nature of Possible Penalties: Acceptable.
>
> Mr. Robinson understands the concept of legal consequences. He understands relevant consequences which could be imposed upon him if found guilty. The Defendant understands what the pleas of guilty and not guilty mean[ ]. He understands what no contest and plea bargaining refer to. Finally, at this juncture, Mr. Robinson appears to be fully capable of arriving at a plea in a rational manner. It is worthy to point out that during this exam, the

14

> Defendant indicated that on one occasion, when he was
> sleeping, he had a dream in which God told him that his
> current legal charges will be resolved. While Mr. Robinson
> remains hopeful that that dream will come to fruition, the
> Defendant verbalized a clear cut and "reality based"
> understanding of potential consequences that are
> associated with the charges that are of current interest to
> the Court.
>
> . . .
>
> Capacity to Testify Relevantly: Acceptable.
>
> Mr. Robinson communicated with an acceptable degree of
> coherence and relevance.

On March 11, 2011, after two of the three doctors determined that Robinson
was competent to proceed to trial, the trial judge found Robinson competent to
proceed. (Respondent's Exhibit 6 at 173)[2]

A month later, on April 11, 2011, at a hearing on a motion to suppress,
Robinson testified intelligently and coherently about his interrogation with police.
(Respondent's Exhibit 1a, Transcript of Motion to Suppress Hearing at 222–27)
During the hearing, Robinson testified that he had asked the detectives for an
attorney. (*Id.* at 223) Robinson described how he repeatedly denied the detectives'
accusations and how he felt threatened by the detectives. (*Id.* at 223–25) On cross-

---

[2] *See* Fla. R. Crim. P. 3.210(b) ("If at or in anticipation of any material stages of a
criminal proceeding the court, on its own motion or by motion of the state or defense,
has reasonable grounds to believe that the defendant is not mentally competent to
proceed, the court must promptly commence the process to determine the
defendant's mental condition. The court may order the defendant to be evaluated by
no more than three experts, as needed, and must expeditiously schedule and conduct
a competency hearing.").

examination, Robinson admitted that he signed a form that listed his rights and identified his voice on the recording of the interrogation. (*Id.* at 226–27) Also, Robinson admitted his ten felony convictions. (*Id.* at 226)

At trial, before jury selection, trial counsel informed the trial judge that, even though the trial judge had determined that Robinson was competent, Robinson did not communicate with the defense about the case (Trial Transcript at 8–9):

| | |
|---|---|
| [Trial judge:] | I assume that there [have] been no talks of resolving this case, is that correct? |
| [Trial counsel:] | There [have] been no offers from defense, Your Honor. Just to reiterate, we had some competency issues that were resolved. |
| [Trial judge:] | Yes, they have been resolved through Dr. Poorman and Dr. [Bursten]'s opinions that Mr. Robinson is competent, has an appreciation of the charges, and understands what everyone's role is in this proceeding. |
| [Trial counsel:] | Judge, as I was talking about before, the reason for the competency issues that when I went and discussed the case with Mr. Robinson — and I do believe he understands the maximums and allegations against him, but he doesn't discuss the case with us. He did for a little bit when I was able to run a motion to suppress, but other than that, he hasn't discussed the facts with us. He was instructed not to. |
| [Trial judge:] | Okay. Well, that's, you know, his option. Both of these professionals, when they examined him, said he certainly had the ability to discuss the |

> case with counsel. He communicated in a fully coherent manner. His behavior was appropriate during the exam. He understood the adversarial nature of the court appearance.
>
> I think he mentioned to Dr. [Bursten] that he thought God was going to intercede. Well, there will be a decision by the jury. And whatever that decision is, that will be God's answer on this case, I imagine.

Both Dr. Poorman and Dr. Bursten determined that Robinson was competent to proceed to trial. (Doc. 30-3 at 3, 10) Robinson informed Dr. Bursten that he believed that God would resolve his criminal charges. (Doc. 30-3 at 9) Dr. Bursten acknowledged Robinson's religious belief but still determined that other statements and behavior by Robinson demonstrated that Robinson understood the pending charges, the range and nature of the penalties, and the adversarial nature of the criminal case and could communicate with a lawyer, behave appropriately in the courtroom, and testify coherently about relevant facts. (Doc. 30-3 at 8–10)

If trial counsel had moved for a competency evaluation after Robinson made the statements about God at trial, a motion would not have succeeded. Consequently, trial counsel did not deficiently perform. *Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995) ("'[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.'") (citation omitted). *Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney

will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.").

During trial, Robinson behaved appropriately and did not experience any outbursts. During jury selection, the trial judge suggested that Robinson join a sidebar conference. (Trial Transcript at 99) Trial counsel advised that Robinson did not want to participate in jury selection and agreed with any juror whom trial counsel chose. (*Id.*) Robinson thanked the trial judge when the trial judge asked the bailiff to ensure that Robinson received dinner after the first day of trial. (*Id.* at 315) After the jury retired to deliberate, the trial judge told Robinson, "I'm sure you're appreciative of the efforts expended on your behalf by your lawyers, correct?" (*Id.* at 367) Robinson replied, "Yes, sir." (*Id.* at 367) After trial, during an interview for a presentence investigation report, Robinson denied suffering from any serious mental health condition, and the probation officer who interviewed Robinson verified that fact with Robinson's sister. (Doc. 30-3 at 21)

When evaluating the competency of a defendant, a doctor must consider "whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as factual, understanding of the pending proceedings." Fla. R. Crim. P. 3.211(a)(1). Robinson fails to support his claim with any new evidence that demonstrates that he was incompetent to proceed at the time of trial.

Robinson speculates that a doctor would have opined that he was incompetent during trial and that a trial judge would have accepted that opinion and declared him

incompetent. Because Robinson cannot demonstrate prejudice under *Strickland* with speculation, his claim fails. *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985) ("Speculation is insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation."). *Payne v. Sec'y, Dep't Corrs.*, No. 23-10865, 2025 WL 690056 at *3 (11th Cir. Mar. 4, 2025)[3] ("[A] retrospective inquiry into a defendant's competency at a particular time is possible, if the 'quantity and quality of available evidence [of the defendant's competency at the time of the trial or guilty plea] is adequate to arrive at an assessment that could be labelled as more than mere speculation.'") (quoting *United States v. Wingo*, 789 F.3d 1226, 1238 (11th Cir. 2015)).

Sub-claim A is **DENIED**.


**Sub-claim B**

Robinson asserts that trial counsel deficiently performed by failing to investigate and present an insanity defense at trial. (Doc. 1 at 8–11) He contends that trial counsel should have investigated the defense after learning about his competency evaluation. (Doc. 1 at 10)

The post-conviction court denied the claim as follows (Respondent's Exhibit 6 at 55–56) (state court record citations omitted):

---

[3] 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

A claim of ineffective assistance of counsel for failure to investigate an insanity defense requires the post-conviction court to consider:

(1) whether defense counsel's failure to investigate an insanity defense under the facts presented was outside the broad range of reasonably competent performance standards; and

(2) whether the defendant can establish a reasonable probability that an investigation into an insanity defense by defense counsel would have ultimately resulted in the presentation of a viable insanity defense, and but for counsel's unprofessional errors, the result of the proceeding would have been different.

The Defendant fails to allege, and the record does not reflect, that there are any facts to support the theory that the Defendant is or was ever insane. Therefore, the Defendant fails to establish the theory that the Defendant is or was ever insane. Therefore, the Defendant fails to establish that counsel's actions were outside of the broad range of reasonably competent performance.

Moreover, because the Defendant fails to assert, and the record is void of any facts to support his alleged insanity, the Defendant is unable to establish a reasonable probability that an additional or more thorough investigation into an insanity defense would have ultimately resulted in the presentation of an insanity defense that would have changed the outcome of the proceedings. Accordingly, counsel was not ineffective, and this claim is denied.

In his amended motion for post-conviction relief, Robinson alleged the following facts in support of his claim (Respondent's Exhibit 6 at 41–42):

COUNSEL WAS INEFFECTIVE FOR FAILING TO INVESTIGATE THE MENTAL HEALTH EVALUATION OF THE TWO DOCTORS WHO SAID HE WAS COMPETENT

Counsel failed to adequately challenge the credentials of the doctors, [and] counsel misunderstood the significance of the psychiatrist who said the Defendant was incompetent. Had counsel [taken] the time to explain to the Defendant incompetency was a good defense for him, after the first psychiatrist examined him and said [that] he was incompetent to stand trial, the Defendant would have [gotten] his mind off of just going to trial, and would have listened to counsel when she was saying that the State said make them an offer, in which the Defendant would have said five years, the State would have accepted the plea, the Defendant would have went into open court and signed the papers.

Under Florida law, "[a]ll persons are presumed to be sane. It is an affirmative defense to a criminal prosecution that, at the time of the commission of the acts constituting the offense, the defendant was insane." § 775.027(1), Fla. Stat. Section 775.027(1) and (2), Florida Statutes, requires a defendant to establish insanity by clear and convincing evidence, as follows:

Insanity is established when:

(a) The defendant had a mental infirmity, disease, or defect; and

(b) Because of this condition, the defendant:

1. Did not know what he or she was doing or its consequences; or

2. Although the defendant knew what he or she was doing and its consequences, the defendant did not know that what he or she was doing was wrong.

Mental infirmity, disease, or defect does not constitute a defense of insanity except as provided in this subsection.

In his amended motion for post-conviction relief, Robinson did not identify the "mental infirmity, disease, or defect," that he suffered from at the time of the crime. He did not explain if the "mental infirmity, disease, or defect" either caused him to not know what he was doing or its consequences or caused him to not know what he was doing was wrong. Robinson did not identify any evidence that would have supported an insanity defense. Evidence of incompetency is not relevant to whether a defendant was sane at the time of the crime. *Michael v. State*, 437 So. 2d 138, 141 (Fla. 1983) ("Evidence of incompetency to stand trial is not evidence of a defective mental condition at the time of commission of the offense."). Because Robinson instead speculated that an investigation into insanity would have revealed evidence that supported a mental health defense at trial, the claim was facially deficient. *Aldrich*, 777 F.2d at 636.

Before sexually battering K.H., Robinson acted deliberately and calculatingly by placing an object that looked like a firearm to K.H.'s head, showing her a shotgun shell, threatening to kill her, and placing a condom on his penis before vaginally raping her. Using a condom reduced the likelihood that law enforcement would find Robinson's DNA on K.H. after the crime.

"[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "[I]ntent is rarely susceptible to direct proof and, instead, 'almost always shown solely by circumstantial

evidence[.]'" *Silva v. State*, 388 So. 3d 1077, 1080 (Fla. 3d DCA 2024) (citation omitted). "[L]ay testimony concerning a defendant's actions may be sufficient to meet the state's burden of proving that the defendant is sane beyond a reasonable doubt." *Bourriague v. State*, 820 So. 2d 997, 999 (Fla. 1st DCA 2002).

Because Robinson failed to present any evidence that would have supported an insanity defense and because deliberate and calculating acts by Robinson before he committed the crime would have defeated an insanity defense, Robinson failed to demonstrate a reasonable probability that the outcome at trial would have changed if trial counsel had pursued an insanity defense. Consequently, the post-conviction court did not unreasonably deny the claim. *Kight v. Singletary*, 50 F.3d 1539, 1546 (11th Cir. 1995) ("In light of Kight's denial of complicity in the crime and his failure to come forward with evidence supporting a claim of insanity, we cannot say that his counsel was ineffective for failing to pursue an insanity defense.") (citing *Presnell v. Zant*, 959 F.2d 1524, 1533 (11th Cir. 1992)).

Sub-claim B is **DENIED**.

Accordingly, Robinson's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Robinson and **CLOSE** this case.

## DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Robinson neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to

raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**.

28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

     **DONE AND ORDERED** in Tampa, Florida on May 30, 2025.

                          _____
                          MARY S. SCRIVEN
                          UNITED STATES DISTRICT JUDGE